UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN SIVES, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v<br><br>DJI TECHNOLOGY, INC. AND DJI SERVICE, LLC<br><br>Defendants. | Case No.:<br><br><br><br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Kevin Sives, on behalf of himself and all others similarly situated, by his undersigned attorneys, brings this complaint against Defendants, DJI Technology, Inc. and DJI Service, LLC ("Defendants"). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts and upon the investigation of his counsel as to all other matters.

**INTRODUCTION**

1. This case concerns Defendants' release of a fatal firmware update related to their Phantom 2, Phantom 2 Vision, and Phantom 2 Vision + quadcoptor drones (collectively, "Phantom 2 Drones"). In or about December 2015, owners and users of the Phantom Drones designed, manufactured and sold by Defendants began experiencing immediate, critical problems with their drones upon installation of a firmware update released by Defendants.

2. Immediately upon updating their firmware, owners and users of the drones lost

1

the ability to record video and take photographs with their drones. The ability to maintain a live video feed while operating the drones is a key function of the drones, and a primary reason that owners purchase the drones.

3. Defendants knew or should have known that their firmware update had the direct and immediate effect of critically damaging the drones, however Defendants have refused to take any responsibility for the damage caused and have refused to repair or replace the damaged drones without charging fees for such repairs or replacements.

## PARTIES

4. Plaintiff Kevin Sives is a citizen of Pennsylvania, residing in Hawley, Pennsylvania. Mr. Sives purchased a Phantom 2 Vision + quadcoptor drone from Defendants' website, www.dji.com, on or about March 28, 2015. Mr. Sives received his drone on or about April 3, 2015.

5. Defendant DJI Technology, Inc. is a corporation organized under the laws of California with its headquarters located in Burbank, California.

6. Defendant DJI Service LLC is a limited liability company organized under the laws of California with its headquarters located in Carson, California.

7. Defendants, DJI Technology, Inc. and DJI Service, LLC are North American subsidiaries of SZ DJI Technology Co., Ltd., a Chinese entity based in Shenzhen, China.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(d), in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Class are citizens of a state different from Defendants.

9. This Court has personal jurisdiction over Defendants because Defendants continually and systematically transact business within the Commonwealth of Pennsylvania and throughout the United States.

10. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. 1391(b) and (c) and 15 U.S.C. §§ 15 and 22 because: (a) Defendants transact business and/or committed an illegal or tortious act in this District; and (b) a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

## FACTUAL ALLEGATIONS

11. Defendants hold themselves out as designers, manufacturers and sellers of premium drone products, and as market leaders with respect to easy-to-use drones and aerial photography and videography systems.

12. Defendants sell their drone products on their website, www.dji.com, as well as through various web-based and brick-and-mortar retailers nationwide, including retailers located in Pennsylvania.

13. Defendants designed, manufactured and sold a model of drone known as the Phantom 2, Phantom 2 Vision, and Phantom 2 Vision + quadcoptor drone (collectively, "Phantom 2 Drone") to recreational consumers and users.

14. Among other things, Defendants advertised the Phantom 2 Drone as allowing users to "shoot fully stabilized video from the sky, right out of the box."[1]

15. Defendants also advertised that the Phantom 2 Drone "is unbelievably easy to fly. Combined with smooth stabilized footage… aerial cinematography and videography has

---

[1] http://store.dji.com/product/phantom-2-h4-3d

never been easier."[2]

16. Finally, Defendants represented that while operating the Phantom 2 Drone, a user can "see what the camera sees and lose yourself in picture quality so good it will feel like you're in the sky yourself."[3]

17. Indeed, the name of the Drone itself explicitly represents that the user will have *vision* while operating the Drone.

18. The Phantom 2 Drone is used in conjunction with mobile applications (i.e., "apps") that allow users to, among other things, view and edit live video footage and photographs taken during flights from their mobile devices.

19. The apps associated with the Phantom 2 Drones are created by Defendants and installed on computers or mobile devices, such as cellular phones or tablets.

20. Firmware updates associated with the apps are also created by Defendants and released periodically.

21. Customers are instructed to download and install the app updates on their computers and/or mobile devices as they are released by Defendants in order to maintain or improve the functionality of their drones, including the Phantom 2 Drone.

22. Defendants' website expressly represents that its products, including the Phantom 2 Drones, and the products' associated firmware, are compatible with the iOS and Android operating system (i.e., the operating systems created by Apple and Google).

23. Defendants created an application for the iOS and Android mobile operating systems known as the "DJI Vision" app.

24. Defendants also created and issued a firmware update for the DJI Vision apps

---

[2] *Id.*
[3] *Id.*

in December 2015.

25. At that time, Defendants' customers received notifications that their DJI Vision apps needed to be updated, or the apps were updated automatically, depending upon the settings selected on users' computers, cellular phones or other devices.

26. Immediately after Defendants' December 2015 firmware update[4] was downloaded and installed on users' computers, cellular phones and/or other devices, many consumers began experience serious functionality issues with their Phantom 2 Drones.

27. Specifically, the Phantom 2 Drones immediately lost the ability to display or record live video footage or take photographs. In other words, users could no longer view a live video feed or take photographs on their computers or mobile devices while operating the Drones.

28. Moreover, following the update, users lost the ability to safely and properly navigate the Drones because they could no longer view the Drone cameras and were unable to safely fly and navigate the Drones.

29. The lost functionality of the Phantom 2 Drones occurred because the defective firmware update created and released by Defendants, which critically affected the Drones' range extender and wi-fi modules, which are component parts of the Drones.

30. A large number of Defendants' customers contacted Defendants' customer service department and/or posted questions, comments and complaints about their common problems on message boards and online forums shortly after the December 2015 software update was released. *See* Exhibit A (compilation of various forum posts on Defendants'

---

[4] Upon information and belief, the firmware update that caused the functionality issues described herein was Version 1.0.60 but may go back as far as 1.0.52 or even further back. Plaintiff reserves the right to amend this Complaint after discovery and add additional allegations about Defendants' various software versions.

website and reviews of Defendants' DJI Vision application).

31.

32. Despite knowledge that the problems caused by Defendants' own firmware update are widespread and fatal to their customers and users of the Phantom 2 Drones, Defendants have refused to repair the damaged Drones or their component parts without imposing repair or replacement costs on their customers. Indeed, given the hefty repair costs, many users are forced to purchase new Drones instead of paying for repairs that were not their fault.

## PLAINTFF'S FACTS

33. Plaintiff, Kevin Sives, purchased a Phantom 2 Drone on or about March 28, 2015. He purchased the Drone from Defendants' website for $1,169.00.

34. Plaintiff Sives operated his Phantom 2 Drone without incident until September 20, 2016. He was able to fly the Drone, view a live video feed from the Drone's camera on his mobile device, and take aerial videos and photographs with the Drone while it was in flight.

35. In or about December 2015, Defendants released their DJI Vision iOS and Android update and Plaintiff Sives updated his mobile device on or about September 20, 2016.

36. In or about December 2015, Defendants' firmware update was released.

37. On September 20, 2016, Plaintiff Sives updated his DJI mobile app which then pushed Defendants' firmware update to his Phantom 2 Drone. As a result, Plaintiffs' Phantom 2 Drone lost the ability to take photographs and he could no longer view a live video feed on his mobile device while operating the Drone.

38. Moreover, as he could no longer see what the Drone's camera could see while in-flight, Plaintiff could only "fly blind" while operating the Drone.

39. In short, Plaintiff Sives was deprived of the primary use of his Phantom 2 Drone as the firmware update rendered his Drone useless.

40. Plaintiff Sives immediately contacted Defendants' customer service department regarding the problems with his Drone. At that time, Defendants' customer service representative advised that Defendants would repair the Drone, and fix the problems, free of charge.

41. Plaintiff mailed his Drone to Defendants for repair on September 23, 2016 with a prepaid shipping label from Defendants. Shortly after, however, Defendants stated that they would repair Plaintiff's drone only if Plaintiff paid $250.00 to fix the problems that were \caused by Defendants' own firmware update.

42. Plaintiff refused to pay the quoted amount, as the Phantom 2 Drone problems were caused wholly by Defendants' own actions, and Defendants thereafter shipped Plaintiff's Drone back to him without repairing it on December 20, 2016. Over three months after shipping his Drone to Defendants, Plaintiff received his Drone on December 28, 2016.

43. As a direct and proximate result of Defendants' actions as described herein, Plaintiff suffered injury in fact and lost money and property because he would not have purchased, or would have paid less, for the Phantom 2 Drone if he had known that Defendants would issue a firmware update that would render the Drone useless or substantially less functional.

44. Thus, as a direct and proximate result of Defendant's actions as described herein, Plaintiff purchased a Phantom 2 Drone that no longer works as intended, and/or he will be required to incur costs to replace or repair his Drone or the Drone's component parts in order to restore it to working order.

## **CLASS ACTION ALLEGATIONS**

45.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (b)(3) on behalf of himself and on behalf of all other similarly situated individuals and seeks to represent the following class:

> All purchasers of Phantom 2 Drones who downloaded and installed the December 2015 DJI Vision update (the "Nationwide Class").

46.   In the alternative, Plaintiff seeks to represent the following state sub-class:

> All purchasers of Phantom 2 Drones who downloaded and installed the December 2015 DJI Vision update, who resided in Pennsylvania at the time of the Drones' purchase (the "Pennsylvania Subclass").

47.   Together, the Nationwide Class and Pennsylvania Class shall be referred to as the "Class." Excluded from the Class are Defendants, their assigns, successors, legal representatives, the Judge assigned to this case and their families and staff, and any entities in which Defendants have a controlling interest.

48.   Plaintiff reserves the right to revise these class definitions and to add additional subclasses as appropriate based on facts learned as the litigation progresses.

49.   Numerosity: The Class is sufficiently numerous that joinder of all members is impracticable. While the exact numbers and identities of Class Members are unknown at this time, being in the sole possession of Defendants and being attainable by Plaintiff only through discovery, Plaintiff believes that thousands, if not tens of thousands, of Phantom 2 Drones have been sold throughout the country.

50.   Commonality: Common questions of law and fact exist for each cause of action and predominate over questions involving individual Members of the Class. These common issues include, but are not limited to, whether:

 (a) Defendants' firmware update the Phantom 2 Drones to be unable to display live video feeds, record videos, and take photographs;

 (b) Defendants breached their express and implied warranties;

 (c) Defendants violated the consumer protection statutes applicable to the Pennsylvania subclass;

 (d) Defendants were negligent in designing and disseminating the December 2015 firmware update, and/or in failing to warn customers regarding the risks and implications of installing said update;

 (e) Defendants are being unjustly enriched by charging Class Members repair and replacement fees to remedy the damage caused to Class Members' Drones by Defendants' own software updates;

 (f) Plaintiff and the Class have been and continue to be damaged by Defendants' alleged misconduct and, if so, the proper measure of their damages; and

 (g) Defendants engaged in practices that warrant equitable and injunctive relief.

51. <u>Typicality</u>: Plaintiff's claims are typical of the claims of all Members of the proposed Class because, among other things, Plaintiff and all Class Members were damaged by the same wrongful conduct of Defendants as alleged herein. The relief Plaintiff seeks is the same as that sought by the proposed Class.

52. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the proposed Class, and Plaintiff's interests do not conflict with the interests of other members of the proposed Class whom he seeks to represent. Plaintiff has retained counsel competent and experienced in class action, consumer protection, and other complex

litigation.

53. <u>Predominance and Superiority</u>: Questions of law common to the Members of the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation by of all members of the Class is impracticable because the cost of litigation would be prohibitively expensive for each Class Member and would impose an immense burden upon the courts. Plaintiff and the Class are not likely to be able to vindicate and enforce their rights unless this action is maintained as a class action. Individualized litigation by Class Members would also present the potential for inconsistent or contradictory judgments and rulings. By contrast, proceeding as a class action would present fewer management difficulties, conserve the resources of the parties and of the court system, and is the only means to protect the rights of all Class Members.

54. Defendants have acted and will act on grounds generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies including final injunctive relief with respect to the Class as a whole.

## <u>COUNT I</u>

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania Subclass)**

55. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

56. Defendants specifically advertised that the Phantom 2 Drones were capable of displaying a live video feed, recording live video footage and taking photographs while in operation. In fact, these were primary features and material functions of the Drones, highlighted by the name of the Drones: the Phantom 2 *Vision*.

57. Defendants also advertised and represented that the Phantom 2 Drones were compatible with computers and devices utilizing iOS and Android operating systems.

58. Defendants represented that its firmware, including updates to its firmware applications, were compatible with iOS and Android operating systems.

59. These representations constituted express warranties by Defendants, which became part of the basis of the bargain between Defendants and the Class Members.

60. Defendants breached these express warranties by issuing firmware updates to the the Phantom 2 Drones that severely damaged the Drones when customers and users attempted to operate their Drones in conjunction with Defendants' firmware associated with iOS and Android systems.

61. Plaintiff and the Class Members notified Defendants of the breach of warranty within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure its breach of express warranty would have been futile. Defendants also knew of the problems and consequences of their firmware update via complaints and service requests to Defendants' customer service department and posts on online forums, and yet have failed to comply with their warranty obligations.

62. As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members purchased Phantom 2 Drones they otherwise would not have, overpaid for their Drones, did not receive the benefit of their bargain, and their Drones suffered a diminution in value. Plaintiff and Class Members have also incurred or will incur costs related to repairing or replacing their Drones.

63. Plaintiff and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of

11

Defendants' conduct described herein.

## COUNT II

## BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*)

64. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65. Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

66. Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

67. The Phantom 2 Drones are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

68. Defendants' representations that the Phantom 2 Drones are capable of taking live video footage and aerial photographs, and are designed to work with computers and devices utilizing iOS and Android operating systems, are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

69. Defendants breached these warranties by

    (a) designing and disseminating a firmware update applicable to computers and devices utilizing mobile operating systems that caused the Phantom 2 Drones to lose the ability to take live video footage and aerial photographs, and deprived users of the ability to see what the Drones' camera sees during operation; and

    (b) Refusing and/or failing to honor the express warranties by repairing or

>   replacing, free of charge, the Phantom 2 Drones or their component parts that were damaged by way of Defendants' firmware update.

70. Plaintiff and the other Class Members relied on the existence of the express warranties in deciding whether to purchase or lease the Phantom 2 Drones.

71. Defendants' breach of the express warranties has deprived Plaintiff and the other Class Members of the benefit of their bargains.

72. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

73. Defendants have been afforded a reasonable opportunity to cure their breach of the express warranties and/or Plaintiff and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure its breach of written warranties would have been futile.  Defendants were also on notice of the problems resulting from their firmware update from the complaints and service requests it received from Class Members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

74. As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney's fees and/or other relief as deemed appropriate.

## COUNT III

## BREACH OF IMPLIED WARRANTY

### (On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania Subclass)

75. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

76. Defendants were, at all relevant times, the manufacturers, distributors, warrantors, and/or sellers of the Phantom 2 Drones.

77. Defendants knew or had reason to know of the specific use for which the Phantom 2 Drones were purchased.

78. Defendants provided Plaintiff and the other Class members with an implied warranty that the Phantom 2 Drones, including their component parts and the required, associated firmware applications, are merchantable and fit for the ordinary purposes for which they were sold.

79. However, the Phantom 2 Drones are not fit for their ordinary purpose of taking aerial video footage and photographs while in flight because, *inter alia*, the Phantom 2 Drones were rendered inoperable and useless by Defendants' December 2015 firmware update, which eliminated the Drones' ability to display live video feeds or take videos or photographs while in operation.

80. The Phantom 2 Drones are thus not fit for their particular purpose for their particular purpose of viewing video footage and recording or photographs.

81. Defendants impliedly warranted that the Phantom 2 Drones were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Phantom 2 Drones and their component parts, which were manufactured, supplied, distributed, and/or sold by Defendants, were capable of displaying

video footage recording video, and taking photographs; and (ii) a warranty that the Phantom 2 Drones and the associated DJI Vision mobile updates would be fit for their intended use and not unilaterally prohibit users access to the fundamental features of their Drones.

82. Contrary to the applicable implied warranties, the Phantom 2 Drones, their component parts and the associated firmware application and app updates are not fit for their ordinary and intended purpose of allowing Plaintiff and other Class Members to safely and reliably operate their Drones and utilize the live video feed and video recording and photograph functions while in operation.

83. Defendants' actions, as complained of herein, breached the implied warranty that the Phantom 2 Drones were of merchantable quality and fit for such use.

84. As a result, Plaintiff and the members of the Class suffered damages in an amount to be determined at trial.

## COUNT IV

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania Subclass)**

85. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86. All contracts in Pennsylvania contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

87. Defendants breached the covenant of good faith and fair dealing by, *inter alia*, creating and disseminating a defective firmware update to customers' computers, mobile devices, and Phantom 2 Drones; failing to warn customers that the update would eliminate

critical functions and features of their Drones, thereby rendering their Drones effectively useless; and failing to fully and properly repair the Drones without imposing additional fees or charges on their customers.

88.     Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT V

## NEGLIGENCE

**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania Subclass)**

89.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

90.     Defendants owed a duty to Plaintiff and the Class Members to use reasonable care to ensure that the firmware updates they designed and disseminated to customers would not materially damage the Phantom 2 Drones or render the Drones unusable.

91.     Defendants also owed a duty to Plaintiff and the Class members to disclose that the firmware update issued in or about December 2015 could materially damage the Phantom 2 Drones and/or render the Drones unusable when the update was downloaded and installed, along with the other disclosures Defendants included in the December 2015 update.

92.     Defendants knew or should have known that the December 2015 firmware update would have the above referenced effects on the Phantom 2 Drones.

93.     Defendants breached their duties to Plaintiff and the Class Members by failing to use reasonable measures to ensure that their firmware update would not materially damage the Phantom 2 Drones or render the Drones unusable.

94. Defendants breached their duties to Plaintiff and the Class Members by failing warn Plaintiff and the Class about the risk and hazards associated with downloading and installing the firmware update, including the risk that the update would significantly damage their Phantom 2 Drones and/or render them useless.

95. It was reasonably foreseeable that Defendants' breach of their duties would result in injury to Plaintiff and the Class Members, including but not limited to the loss of use and functionality of their Phantom 2 Drones, the cost of any repairs utilized in an attempt to remedy the damage to their Drones, and/or the cost of purchasing replacement Drones.

96. As a result, Plaintiff and the members of the Class suffered damages in an amount to be determined at trial

### COUNT VI

### BREACH OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

**(On behalf of Pennsylvania Subclass)**

97. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98. The conduct alleged above constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of Section 201-2(4)(v),(vii), (xiv) and (xxi) of the UTPCPL, 73 Pa.C.S.A. §§ 201-1, *et seq.*

99. The UTPCPL applies to the claims of Plaintiff and the other members of the Pennsylvania Class because the conduct which constitutes violations of the UTPCPL by Defendants occurred within the Commonwealth of Pennsylvania.

100. Plaintiff Sives and other members of the Pennsylvania Class are consumers

who purchased Phantom 2 Drones primarily for personal, family or household purposes within the meaning of 73 Pa.C.S.A. § 201-9.2.

101. Defendants used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of 73 Pa.C.S.A. §§ 201-2 and 201-3.

102. Defendants' concealments, omissions, deceptions and conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiff Sives and the other members of the Pennsylvania Subclass to be deceived.

103. Defendants intended that Plaintiff Sives and the other members of the Pennsylvania Class would rely on their misrepresentations, concealment, warranties, deceptions and/or omissions.

104. Plaintiff Sives and the other members of the Pennsylvania Class have been damaged as a proximate result of Defendants' violations of the UTPCPL and have suffered actual, ascertainable losses.

105. As a direct and proximate result of Defendants' violations of the UTPCPL as set forth above, Plaintiff Sives and the other members of the Pennsylvania Class have suffered an ascertainable loss of money and are therefore entitled to relief, including damages, plus triple damages, costs and attorney's fees under Section 201-9.2 of the UTPCPL.

106. To the extent that justifiable reliance is required to be pled, Plaintiff has justifiably relied on the Defendants' conduct and omissions as set forth above. Plaintiff had no knowledge of the technical matters involved in the operation of the Drones or the maintenance of their functionality through firmware updates, and he had no choice but to rely on Defendants conduct and statements as to such matters.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Classes, respectfully requests that this Court:

a. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b. appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

c. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

d. award pre-judgment and post-judgment interest on such monetary relief;

e. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Phantom 2 Drones, or the component parts damaged by Defendants' software update;

f. award reasonable attorney's fees and costs; and

g. grant such further relief that this Court deems appropriate.

Dated: February 16, 2017                    Respectfully submitted,

                                                  By:  */s/ Joseph G. Sauder*
                                                       Joseph G. Sauder
                                                       Matthew D. Schelkopf
                                                       Joseph B. Kenney
                                                       **McCUNE · WRIGHT · AREVALO, LLP**
                                                       555 Lancaster Ave.
                                                       Berwyn, PA 19312
                                                       Telephone: (610) 200-0580
                                                       Facsimile: (909) 557-1275

>jgs@mccunewright.com
>mds@mccunewright.com
>jbk@mccunewright.com
>
>Bruce D. Greenberg
>**LITE DEPALMA GREENBERG, LLC**
>570 Broad Street, Suite 1201
>Newark, New Jersey 07102
>Telephone: (973) 877-3811
>Facsimile: (973) 623-0858
>bgreenberg@litedepalma.com
>
>*Attorneys for Plaintiff and the putative Class*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 16, 2017                    Respectfully submitted,

>By:   */s/ Joseph G. Sauder*
>Joseph G. Sauder
>**McCUNE · WRIGHT · AREVALO, LLP**
>555 Lancaster Ave.
>Berwyn, PA 19312
>Telephone: (610) 200-0580
>Facsimile: (909) 557-1275
>jgs@mccunewright.com
>*Attorney for Plaintiff and the putative Class*